1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JENNIFER AND EUGENE WONG, for themselves and as parents of Student JW, a minor, | No. |
| Plaintiffs, | |
| v. | COMPLAINT |
| SEATTLE SCHOOL DISTRICT NO. 1, | |
| Defendant. | |

## I. PRELIMINARY STATEMENT

COME NOW the Plaintiffs, Jennifer and Eugene Wong, for themselves and as parents of

JW, a minor, (hereinafter "Student" or "JW") hereby seek monetary damages from Defendant,

the Seattle Public Schools District No. 1 ("District") for its failure to provide Student with a free

appropriate public education ("FAPE"), and for discrimination against him on the basis of his

COMPLAINT- 1

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

disabilities.

1.      JW is a student with disabilities: autism, dysgraphia, and a generalized anxiety disorder.

2.      The District's actions have exacerbated the debilitation that JW has experienced as a result of his disabilities.  JW has suffered and continues to suffer from the District's Failure to afford him FAPE, which has, among other things, delayed his academic, behavioral, and emotional functioning, and caused him to develop depression and a generalized anxiety disorder. Plaintiffs allege that the District deprived JW of his rights under the Individuals with Disabilities Act, ("IDEA"), 20 U.S.C. § *et seq.* 1401 *et seq.*; ("Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.,* ("Section 504"), Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §12131 et seq., ( "ADA"),  Chapter 49.60 of the Revised Code of Washington *et seq.*

3.      Plaintiffs seek injunctive relief, compensatory education, as well as compensatory damages to compensate JW for the District's violations of his rights and the injuries he sustained as a result of those violations.

4.      Plaintiff has exhausted all administrative remedies.

5.      The District's actions set forth below were done intentionally or with deliberate indifference to Plaintiffs' federal statutory rights.  The District knew or should have known that its actions as set forth herein violated the standards of conduct which were legally required at the time those actions took place.

COMPLAINT- 2

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

## II.  JURISDICTION AND VENUE

6.      This is an action for declaratory and injunctive relief, attorneys' fees and damages

pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 et seq., (hereinafter

referred to as the "ADA") and Chapter 49.60 of the Revised Code of Washington and IDEA, 42

U.S.C. §1415 et seq, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.,*

("Section 504").   This Court is vested with original jurisdiction under 28 U.S.C. §§1331 and

1343.

7.      Venue is proper in this Court, the Western District of Washington, pursuant to 28

U.S.C. §1391 (B) and Local Rules of the United States District Court for the Western District of

Washington.

## III. PARTIES

8.      Plaintiffs, Jennifer and Eugene Wong (hereinafter referred to as the "Wongs") and

Student are residents of the State of Washington.  Student is a qualified individual with a

disability under the ADA and IDEA.  Student suffers from what constitutes a "qualified

disability" under the Americans with Disabilities Act of 1990, ("ADA"), Chapter 49.60 of the

Revised Code of Washington and all other applicable Federal statutes and regulations to the

extent that Student is diagnosed with a complex diagnostic profile which includes Generalized

Anxiety Disorder, Autism, and Dysgraphia, which significantly impacted his ability to learn.  He

has also been diagnosed as "twice-exceptional".  He qualifies for special education and requires

COMPLAINT- 3

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

accommodations for a FAPE.  Prior to instituting the instant action, at issue in this matter, Student was denied accommodations needed for a FAPE due to the District's lack of compliance with the ADA and Individuals with Disabilities Education Act of 2004 (IDEA). Student continues to desire a FAPE, but continues to be denied full equal access due to a lack of appropriate accommodations.

9.     The Defendant, Seattle Public Schools District No. 1, is a public entity conducting business in the State of Washington and is located in Washington state, receives federal financial assistance from the United States Department of Education, and is therefore subject to suit under the laws of Washington state, the laws of the United States, and the Constitution of the United States in carrying out its duties and responsibilities under Title VI of the Civil Rights Act of 1964; the Washington Law Against Discrimination (Chapter 49.60 R.C.W.); Section 504 of the Rehabilitation Act of 1973, as amended, Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq. (2006); and related laws, including IDEA.

10.     The School District is entrusted with the responsibility for creating and maintaining an educational environment that is physically and psychologically safe for students. The School District is also entrusted with the responsibility for educating and accommodating students with special needs and providing a FAPE.   Further, the School District is also entrusted with the responsibility for enforcing, and ensuring that its subordinates, agents, and employees

COMPLAINT- 4

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

enforce, such laws and policies by taking prompt remedial action following acts of inappropriate behavior, or discrimination against students, including failure to provide a FAPE.

11.    The District is a local educational agency (LEA) within the meaning of the IDEA and Section 504.   As such, the District receives federal funds for the purpose of educating children with disabilities within its boundaries.   The District is also a "public entity" as defined by Title II of the ADA. 42 U.S.C. § 12131 (1).

12.    The District has the responsibility under federal and state law to assure that students with disabilities are properly evaluated, identified, and provided with appropriate special education, related services, supplemental supports, and/or accommodations to enable them to achieve meaningful educational benefit and enjoy equal educational opportunities in relation to their typically developing age mates, in the least restrictive appropriate environment given their individual needs.

13.    The School District failed to make, implement, enforce, and failed to ensure that its subordinates, agents, and employees enforced, the above-described laws and policies or to take necessary and prompt remedial action following knowledge or reports of discrimination.

14.    This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because this action seeks a civil remedy under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and Title II of the Americans with Disabilities Act (42 U.S.C. § 12131

COMPLAINT- 5

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

1
2   et seq. (2006), and related laws. The Court has supplemental jurisdiction over state law claims
3   made herein pursuant to 28 U.S.C. § 1367.
4
5       15.     The Court has authority to award costs and attorneys' fees under 42 U.S.C. §
6   1988, RCW 49.60.030, Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.
7   (2006); and Section 504 of the Rehabilitation Act of 1973, as amended and IDEA (42 U.S.C.  §
8   1415 (3) (B).
9
10      16.     All events giving rise to this lawsuit occurred in the Western District of
11  Washington.
12
13              **IV. STATUTORY AND REGULATORY BACKGROUND**
14
        **Duty to Provide a Free and Appropriate Public Education**
15
16      17.     Any student with a disability who needs individualized instruction in order
    to benefit from his or her educational programming, and meets the state mandated age criteria, is
17
18  eligible to receive a free and appropriate special education (FAPE), comprised of special
19  education and related services. 20 U.S.C. § 1401(a); 34 C.F.R. § 300.26(b)(3).  Section 504 also
20  requires that students with disabilities be provided FAPE.  In addition, Section 504 prohibits the
21
    exclusion of, or discrimination against, any otherwise qualified individual with a disability by
22
23  federal fund recipients, as does Title II of the ADA, 42 U.S.C. § 12132, et seq.  Failure to
24  provide accommodations and supplemental services constitutes discrimination for purposes of
25  both Section 504 and the ADA.
26
27  COMPLAINT- 6                          Shaw Law Group, PLLC.
                                           323 1ˢᵗ Avenue West
28                                         Seattle, WA  98119
                                           206-623-1225  /  206-284-2245 Fax

18.     Both the IDEA and Section 504 require each state and Local Educational Agency (LEA) to locate, identify, and comprehensively evaluate every child with a disability who resides within its boundaries, whether or not those children are enrolled in the public school system. 34 C.F.R. § 300.125; 34 C.F.R. § 104.35

19.     Evaluations must be tailored to assess all areas of educational need and must comprehensively examine all areas of suspected disability.  34 C.F.R. § 300.532 (b)

## V. FACTS

20.     JW was first identified and qualified for services with the District under an IEP in 2009 at about 4 years of age.  Within this pre-kindergarten timeframe JW's parents, the Wongs, obtained an evaluation and diagnosis from the University of Washington CARE clinic diagnosing JW with Autism paired with extraordinary high cognitive functioning, sometimes known as a twice-exceptional child.  The complex interplay between his high cognitive skills and his disability put him at-risk for depression, and JW presented with clinically significant difficulties in the areas of aggression, anxiety, atypical behavior, and withdrawal.  The report also cautioned that JW would likely get bored with age-appropriate academic material and that this may impact his ability to be attentive in class.  This CARE clinic report was provided to the District by the Parents.

21.     From 2009 through the filing of this complaint, IEPs have been created by the District for JW.  JW's IEPs were implemented at a developmental preschool and then at the

COMPLAINT- 7

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

Student's neighborhood reference school ("Reference School") both within the District.  JW

attended his Reference School from Kindergarten in 2010 into third grade in 2014.  In the

Kindergarten 2010-2011 school year, JW was awarded the Presidential Award for Academic

Excellence. In First grade 2011-2012 school year ("First Grade") JW was awarded and received

an academic award for completing challenge level work.

22.     In 2009 through 2012, JW had limited interest in his peers preferring the company

of adult teachers and staff.  Parents noted a change in JW's level of interest in peers and a slight

rise in challenging behavior in the First Grade.  During the First Grade year, JW told his mother

that "there are little forest creatures in my class" in reference to his peers.   The District

completed a re-evaluation of JW in 2012, still qualifying him for services under and IEP ("2012

re-evaluation").  Within the parent response to the 2012 re-evaluation, the Wong's requested UW

Care Clinician participate in the preparation of the IEP due to increases in dysregulation and the

need for increased support in peer interactions.  The District failed to include the UW Care

Clinician or allow her to participate in the IEP process.

**Second Grade:**

23.     In the 2012-2013 school year ("Second Grade") JW's academics began to decline

and JW became more frequently dysregulated, JW showed signs of stress and was frequently

crying, failed to perform academic tasks, and was eloping from the classroom. Parents and David

McMillin ("Teacher DM"), JW's primary teacher for Second Grade, frequently requested

COMPLAINT- 8

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

meetings for FBA and BIPs to address these behaviors.

24.     Teacher DM also noted that during that school year another student RP began to bother JW; she provoked him in order "to get a rise out of him".  Teacher DM also noted during that school year that RP's father came to school to observe the lunchtime.  Teacher DM believed RP's father was upset that RP was not eating all of her lunch. RP's parents alleged in an email to all classroom parents that students were not given enough time to eat lunch, and that he came to school and timed the lunch.  JW's mother received the email and forwarded it to the Reference School administration with the caveat that she did not want any retaliation against JW because she shared the email with administration.  JW's mother was assured by administration that there would be no implications upon JW.  JW's mom was subsequently removed from any further emails regarding lunch times.

25.     Also, during this school year the Wong's were concerned about the continued negative changes in JW and requested a consultation with the District's Autism Task Force (TAT Team).  When the TAT Team did not evaluate JW, the Wong's hired Manya Ralkowski, M.Ed., BCBA from the CARE clinic to evaluate JW and provided her report to the Reference School. Despite this, the District still failed to implement the supports for JW. JW continued to regress in his ability to regulate himself as well as in his ability to access an education.

**Third Grade/Targeting of JW**:

26.     In the 2013-2014 school year ("Third Grade") RP continued to target JW.  Also,

COMPLAINT- 9

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

students in JW's Third Grade class would purposely agitate him, cause him to have behavioral

meltdowns and aggressive outbursts so as to create distractions in the classroom.  JW's Third

Grade teacher found a paper that was called "the plan" where the students had made a schedule

for who would agitate the Student.  The goal of "the plan" was to cause JW to have a

"meltdown".  JW's Third Grade teacher attempted to address "the plan", and while some other

students stopped harassing JW, RP continued to provoke and bully JW.

**JW's Third Grade behavior:**

27.     By Third Grade the Student had regressed so significantly it was too difficult to

overcome.  He started the year with regression but with no corresponding increases in supports.

With the additional targeting by RP and others, JW would have meltdowns and stim more

frequently and at more escalated levels.   This would include extreme negative talk, classroom

elopement, destruction of his work product and environment. The IEP for the 2013-2014 school

year ("Third Grade IEP") did state that JW's behavior does impede his learning.  The Wong's

continued to ask for the TAT Team to consult on JW's behavior, and for more supports in the

form of a one-on-one Instructional Aide and more appropriate programming. The District was

aware of JW's regression and need for additional support, yet it failed to provide these supports.

Later, and as the result of  RP's father's behavior and reactions to interactions between JW and

RP, the District hired an individual to shadow Student and take data regarding his behavior

towards RP.  Meanwhile the District falsely led the Wong's to believe that the employee was an

COMPLAINT- 10

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

aide and provided support for the Student.  Despite the District's representations, no support nor aide was provided to JW.

**Third Grade Depression and Threats of Self Harm:**

28.      By way of additional background, throughout the fall of Third Grade there were several interactions between JW and RP.   One incident in late November, 2013, with the Student and RP and her father on the bus on the way to a field trip, ignited a very complex and difficult situation which became both legally and socially challenging for the Wong's the "Fieldtrip Incident".  The handling of the situation by Reference School administration and District level administration, compounded by the lack of inappropriate IEP programming, became so negative and volatile that they significantly impacted and denied JW's access to self-regulation resources. Starting in January, JW began to exhibit symptoms of deep depression which included threats of self-harm, such as telling his mother (as she drove on I-5 highway) that he would jump out of the car door.  The Wong's increased the frequency of JW's appointments with his individual therapist.

**Harassment Intimidation and Bullying ("HIB") Complaints**:

29.      There was a repeated pattern where RP would provoke JW.  JW would respond to these provocations in the form of autistic verbal stims.  Beyond these stims RP began to **fabricate** dramatic stories of her interactions with JW.   For example, RP fabricated stories about how other students held her down while JW kicked her. No adult or student substantiated or

COMPLAINT- 11

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

corroborated that JW was near RP at the time of the alleged incident nor did RP suffer or exhibit any physical injuries from the alleged incidents.  The pattern of RP's parent's HIB complaints was: (1) RP would wait until she got home and then tell her parents stories about her day. She did not report these stories to the Reference School staff or administration at the time of the alleged incidents nor during the school day (even though this was part of her Targeted Student Support Plan). (2)  RP's parents, who already had a history of challenging school administration, turned these stories into repeated unsubstantiated accusations about JW being an instigator of HIB toward RP.  (3) RP's parents would then report further to the Reference School Administration; (4) when the Reference School Administration did not respond to RP's parents with partiality, RP's parents turned the stories into repeated HIB complaints.

30.     The District's HIB department issued two letters to RP's family in 2013 and 2014, and in its findings the District did not take into account: (1) that several of the stories were not corroborated or witnessed by any adults (only 8 and 9 year old student witnesses who were friends of RP); (2) that the behavior JW was exhibiting was a manifestation of his disability; and (3) that there was no intent to actually harm due to age and disability.

31.     During this Third Grade time-frame while RP was fabricating stories and RP's parents were filing HIB Complaints, JW was finally provided with an emergency one-on-one Instructional Aide ("the IA"), and a consultation with the District's TAT Team was finally scheduled.  Unfortunately, as described above, the Aide was not hired to support JW, but merely

COMPLAINT- 12

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

to shadow him, and the date that the TAT Team was scheduled to come to Reference School, was the date that JW was first excluded from school by the District in February of 2014.

32.     Also during this time frame and much to the Wongs' distress when JW's mother asked to review the data sheets maintained by the emergency one-on-one Instructional Aide, the Parents were shocked to find that the sole data being kept was on "Incidents of Aggression" and "Interactions with [RP]".  The IA's placement was part of RP's Targeted Student Support Plan, not to help JW or take data to formulate an appropriate FBA or BIP to address the JW's dysregulation.

33.     Targeted Student Support Plan ("Safety Plan"):  During late fall of Third Grade, and unbeknownst to the Wongs, RP's family was granted a Targeted Student Support Plan.  Due to the pattern of HIB complaints and responses, RP's father threatened to "take matters into his own hands."  Also, during this time frame RP said to a teacher: "I'm not worried, my father has a gun."  When the Wongs learned of RP's Father's threats and RP's Safety Plan in January of 2014, they requested a Safety Plan for JW.  On January 9, 2014, a Safety Plan meeting was held for JW.  In attendance at this meeting was staff and administration of the Reference School as well as District level Special Education Supervisor and Isreal Vela, Executive Directors for Schools for the District.  Included in JW's Safety Plan was keeping RP's father from contacting JW during the transition time when he was getting on and off the school bus.  The Wongs also asked for this Safety Plan to include JW's younger sister, who was in kindergarten, and who rode

COMPLAINT- 13

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

the bus with JW.  It is important to note that after JW's exclusion from school, during the context in which the Wongs informed the bus driver that the Student would not be riding the bus, the Wongs learned from JW's bus driver, that JW's Safety Plan was never shared with him.  This distressed the Wongs further, because not only was JW exposed to danger but his younger sister as well.

**Third Grade Autistic Verbal Stims**:

34.     JW would also frequently go into his imaginary world of Star Wars, which was encouraged by the Reference School Administration and in particular the principal, in an attempt to escape and process emotional stress.  An example of JW's autistic verbal stimming outbursts included aggressive language that he had learned from Star Wars.  On one of the many occasions when RP provoked him, JW told RP that he: "would put you (RP) into Detention Block AA-23". RP found out from her parents that Princess Leia in Star Wars was held in Detention Block AA-23 and "slated for execution".   RP went home to her parents and asked what "execution" was and RP's parents misinterpreted this and reported JW was threatening to kill RP.

**Third Grade IEP, Functional Behavioral Analysis ("FBA"), and Behavioral Intervention Plan ("BIP"):**

35.     During the fall of Third Grade there were attempts at creating FBA and BIPs for JW.  The Wongs provided language for a BIP that was created by Jensen's personal psychologist, but these supports were never incorporated nor were there any corresponding

COMPLAINT- 14

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

amendments to the Third Grade IEP to address emotional support for bullying or self-regulation that would drive a FBA and subsequent BIP. The only amendment to the Third Grade IEP was the adding services to address gross motor skills. Despite requests by the Parents, the Reference School Administration refused to move RP to another classroom while attempting to relocate JW.

**Third Grade Discipline Notices**:

36.      JW's behavior did not result in any physical or medically-documented injury to RP nor any injury to any other student or staff; nor did it involve drugs, weapons, or anything sexual. In response to being notified about the Fieldtrip Incident on November 17, JW's father wrote to Reference School Administration on November 18: "We understand that there has been no action taken to suspend [the Student]. Please be advised that any suspension of [the Student] by the School District will be perceived by his family as tantamount to punishing the victim…it is generally know that [RP] is provoking [the Student]… [JW's] condition has made him vulnerable in his social interactions with his peers, [RP]'s teasing causes anxiety, emotional distress, and low self-esteem… [JW] has not exhibited any propensity to self-initiate violent behavior… we have been working diligently on [JW]'s abilities to regulate himself in his social interactions with his peers. If anything, the School District should be more understanding and protective of JW especially after the regression he suffered during the disastrous 2nd grade…" During the period following this email, the Wongs believed that all the interactions between RP

COMPLAINT- 15

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

and JW were being handled by the Reference School Administration, that JW was not being

disciplined at the District level or otherwise for behavior that was a manifestation of his

disability.

 The Wongs were not aware that during that over the same time period the District issued letters

from its HIB Department to RP's parents finding that JW's behavior were HIBs and that the

District had filed five (5) disciplinary reports into the Student's file, none of which the Parents

had been aware of.  The oldest of the disciplinary reports was dated to November 7, 2013 and the

last dated February, 6, 2014.  The parents only became aware of the District's findings and

reports when they were emailed to Mr. Wong on March 10, 2014 well after the TRO and

February 10th Manifestation Determination/IEP Meeting.

37.     Temporary Restraining Order ("TRO") – On February 7, 2014 RP's father

obtained a TRO in King County Superior Court.  Attached as exhibits to the Petition for the TRO

were unsubstantiated HIB complaints and the District's HIB finding letter dated January 4, 2014.

Reference School Administration contacted the Wongs upon receipt of copy of the TRO and

informed them that the Student could not come to school per the TRO, and that if he did, he

would be turned away.  The TRO was never served upon the Wongs. The Student was excluded

from Reference School starting on or about February 7, 2014, despite the fact that the TRO was

not in effect.

38.     Prior to the TRO hearing, and despite not being provided any discipline notice,

COMPLAINT- 16

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

the Wongs were told that there was to be a Manifestation Determination Hearing for JW on February 10, 2014.  In preparing for the meeting the Wongs worked under pressure with JW's therapists to provide helpful information and opinions' showing that JW's behavior was a manifestation of his disability.  When the Wongs arrived at the hearing they were told that the hearing was not a Manifestation Determination Hearing, but an IEP meeting.  The District's alleged reasoning for this change was that the District was not excluding JW from school or disciplining him (despite Discipline reports in JW's school record and JW being disallowed to attend school).

39.     Also, prior to the TRO hearing on February 14, 2014, due to extreme emotional distress, stress, and dehydration from crying, JW's mother fainted and hit her head on the stone floor of a public restaurant during dinner. She was transported to Overlake Medical Center (the "Hospital") where she stayed overnight due to strange readings on her electrocardiogram ("EKG") without the correlating blood chemistry that accompanies a heart attack.   Upon release from the Hospital, the Cardiologist advised that he believed JW's mom had "Broken heart syndrome" or Takotsubo which is a temporary heart condition that's often brought on by stressful situations. In broken heart syndrome, there's a temporary disruption in the heart's normal pumping function, while the remainder of the heart functions normally or with even more forceful contractions.  Broken heart syndrome is believed to be caused by the heart's reaction to a surge of stress hormones.

COMPLAINT- 17

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

**TRO Hearing:**

40.     The hearing on the TRO was initially set for February 18, 2014, however, RP parents who initially appeared pro se suddenly decided to engage counsel, so the hearing date was reset for February 24, 2014.  A full day hearing occurred before Judge Monica Benton on February 24, 2014 with RP's father, JW's mother, and others testifying. Judge Benton citing JW's age of 9, his diagnosis of autism, and lack of intent, then quashed the TRO and the Petition was Dismissed. The Parents filed supporting Declarations by teachers and staff as well as JW's personal therapists.  Teacher DM specifically stated in his Declaration that RP was "attention seeking" and "would frequently provoke [JW]".

Despite the quashing of the TRO, the TRO and its underlying documents are part of a permanent record in SCOMIS. Due to the unique classification of the proceedings it is searchable through web searches and will appear on JW's background check as a Anti-Harassment Order without regard to JW's tender age nor his disabilities.

41.     After the TRO was quashed, RP's parents continued to threaten the Wongs through their attorney with the threat of civil actions.  To date these civil actions did not occur. The most recent time RP and JW were together was well after the TRO in a public place, a small fast food restaurant, for about 30 minutes during May of 2014.  While RP's father and JW's mother recognized each other, neither RP nor JW even noticed or reacted to each other despite being just a few feet apart at times.

COMPLAINT- 18

42.     Post TRO: In February, 2014 following the quashing of the TRO, JW's personal therapist advised that due to continued anxiety and lack of appropriate programming and supports it was not advisable for JW to return to his Reference School due to the risk of further harm.   At this point, JW had been excluded from school without IEP provided services. Despite this, the District failed to create a safe and supportive plan, programming, or to provide appropriate placement for JW.

43.     From March through June 2014, the Wongs worked with Special Education Supervisor, Ryan Richards ("SE Supervisor"), regarding placement.   The Wongs also attended two IEP team meetings on March 17 and 24, 2014 ("March 2014 IEP Meetings") in good faith and in an attempt to create a plan with a safe and appropriate environment for JW.   Despite the Superior Court's quashing of the TRO due to lack of intent (intent is a key component of HIB), the District sent a HIB compliance officer, to the IEP meetings to ensure that BIP be developed to protect RP's interest.   The District took further action by issuing another letter dated March 4, 2014 reaffirming the HIB findings.

44.     The Wongs got the distinct impression that the IEP team was not meeting for JW's benefit to address regulation, but for RP's.  This was evidenced by proposed goals of "[JW] will not use Start Wars language." And "[JW] will learn language that makes people feel safe." Goals that were for RP and via the HIB Compliance Officer instead of for JW's educational benefit: i.e. goals and programming supporting regulation and appropriate peer interaction.

COMPLAINT- 19

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

1

2  Further, there was a failure by the District to incorporate JW's therapist's recommendations into

3  JW's proposed BIP.

4

5         45.     The Wongs objected to the lack of appropriate programing at these IEP meetings.

6  Also, the Wongs were only provided with plans for one school day of support to keep RP and

7  JW separated.  Due to JW's therapist's recommendations, JW's increased anxiety, and lack of

8
   agreement at the IEP meetings, the Wongs had no choice but to seek alternative educational
9
   placements.   Meanwhile, JW was not being educated nor was the IEP being followed.
10

11        46.     Although the District provided the Student with limited at-home tutoring 2 hours

12  per day for 3 weeks, that was the only service provided. JW's parents had no choice but to pay

13
    for JW to receive private tutoring from Yellowwood Academy.   During the March 2014 IEP
14
    meetings the Parents were led to believe that the District would pay for the private Tutoring and
15

16  that the BIP would be revised by the SE Supervisor to incorporate JW's therapist's

17  recommendations.  Neither of these happened.   And still, JW was not provided an appropriate

18
    placement for his education.
19

20        47.     By way of further background, starting when JW was excluded from school in

21  February of 2014, JW's mother took Family Medical Leave to stay home with him.  Since JW

22
    did not return to Reference School, she was forced to take a downgrade in her position at work to
23

24  accommodate JW's at-home and private tutoring. This resulted in lost wages and loss of health

25  care benefits for JW's mother and father, JW, and JW's sibling.  This financial cost to the family

26

27
   COMPLAINT- 20
28

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

was significant as the family transferred to JW's father's firm's opt-in health insurance, which cost significantly more than JW's mother's employer's insurance.  To date JW's mother has not been able to return to full-time benefited status in her work.

48.      In June of 2014, JW had been out of school for about four months, JW's mother was severely distressed about JW's lack of appropriate educational placement and the District's utter failure and disregard for JW's needs.    On June 4, 2014, JW's mother was again hospitalized for a panic attack while driving.  She was released the same day with a prescription for panic attack medication.   Also, during June 2014 JW's mother asked SE Supervisor about updating the 2012 Re-evaluation.  JW's mother's reasoning was that JW had been out of school for so long that an updated re-evaluation would help to form an appropriate IEP.  JW's mother requested an Independent Educational Evaluation ("IEE") at the District's expense.  Instead of providing this to the family, the District filed Due Process against the family.  The Due Process request for the IEE was subsequently dismissed and the District agreed to fund the 2014 IEE. The IEE was completed by Dr. Alison Brooks during the summer of 2014.

49.      The District entirely failed to serve JW his entire school year of 2013-2014 or to propose an appropriate IEP with an appropriate placement.

50.      The parents had no choice but to move JW to a private school, the Academy for Precision Learning ("APL"), that could accommodate him and keep him safe while educating him.  The Wongs ultimately filed Due Process against the District for its violations.

COMPLAINT- 21

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

1

2      **Procedural History:**

3          51.    In a decision issued May 14, 2016, OSPI Cause No. 2015-SE-0018, Matthew D.

4
Wacker, Administrative Law Judge determined that the District violated the Individuals With

5
Disabilities Education Act, denying the Student a free appropriate public education, and that the

6
APL was an appropriate educational placement for him. Among the remedies, the District was

7
ordered to place JW through the end of the 2015-16 school year, to reimburse the Parents for

8
9 transportation to and from his home and the school, to pay for the cost of psychological services

10 (counseling) by JW's Personal Therapist, through August, 2016, and to reimburse the Parents for

11
transportation to and from school and JW's Personal Therapist's office. The District was also

12
ordered to reevaluate the Student and to then develop a new IEP for him that complies with all

13
14 applicable requirements of the IDEA.

15
           52.    Student continued to attend APL as it is the appropriate environment for him.   At

16
17 the end of the 2015-16 school year, the District did not begin the process of contracting with

18 APL as the Student's placement.  However, even had there been time left in the school year for

19
the District to complete the contracting process, the minimal time remaining in the school year

20
would have made it pointless for the Parents to seek this. The District was also ordered to

21
22 commence a new reevaluation of the Student within 30 days of receiving Parents' consent and to

23 then develop a new IEP, but the order set no timeline for the District to seek consent.

24
[Conclusions of Law 32 & 33, page 27].55.   The District sought consent for reevaluation on July

25
26

27   COMPLAINT- 22

28

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

15, 2016. The Parents shortly thereafter contacted the private-practice psychologist, who the District proposed conduct an evaluation, to obtain information what would be done, and to coordinate scheduling for the multi-day testing.  Based in part on this information, which assisted the Parents to determine the additional evaluation data they deemed necessary (information which is sought on the consent form), the Parents provided their consent for evaluation on July 28, 2015. The evaluation began within 30 days. When it appeared evident that the District would not complete a reevaluation and IEP by the start of the school year, the Parents asked the District to contract with APL as the Student's stay-put placement for the beginning of the 2016-17 school year. In an email dated August 28, 2016, District counsel wrote that: "The school district agrees that under the circumstances APL is the stay-put placement at this point. It will therefore make tuition reimbursement payments to the parents, or directly to APL. It disagrees however, that it is required to contract with APL."

53.     The District held a reevaluation review meeting on September 27, 2016 at which it confirmed an IEP meeting date of October 18, 2016.  On October 10, 2016, the District sent a letter to the Parents unilaterally canceling the IEP meeting stating: "The District will continue to work with you to plan for [JW]'s education in the future, however at this point we will not be holding an IEP meeting on October 18, 2016. The District will reimburse you for [JW]'s tuition at APL for the 2016-17 school year."

54.     Ultimately, to date, the District refuses to contract with APL, the Student's stay-

COMPLAINT- 23

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

put placement, and has not yet completed the evaluation nor has it developed an IEP or proposed a placement for the Student since the May 2016 hearing decision.  In the absence of any IEP in place for the Student, the Student continues to attend school at APL and to receive psychological services from JW's Personal Therapist, to which his Parents transport him.

55.     The Parents filed a hearing request OSPI CAUSE NO. 2016-SE-0082 over the District's refusal to contract with APL.  The foregoing issues related to placement at APL are not the basis for this action, but being provided to update the court on where matters stand with JW's education relative to the District.

56.     Failure to implement.  Despite constant requests by the Parents, the District failed repeatedly to fulfill its obligations to serve and accommodate the Student or follow the Student's Individualized Education Program ("IEP").

**DAMAGES**

57.     As described above and incorporated herein, the parents have been damaged in an amount to be determined at trial.

58.     Compensatory damages for time spent and education denied:

Parents have spent well over 885 hours in working on defending the Student's rights and Mother has lost wages, including inability to regain her previous employment to date.

59.     The Parents and Student have been emotionally harmed and suffer extreme emotional distress, and the Student developed Generalized Anxiety Disorder,  as a result of the

COMPLAINT- 24

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

District's failures and outrageous conduct.   Said damages include, but are not limited to, medical

costs and ongoing therapy costs

60.     Damages resulting from the disparagement and of the Student's record on Scomis,

including loss of opportunity for gainful employment and all attorneys' fees associated with

efforts to attempt to seal said public record.

## VI. FIRST CAUSE OF ACTION -

### VIOLATION OF THE AMERICANS WITH   DISABILITIES ACT

61.     Plaintiffs incorporate herein by reference so much of the other portions of

this Complaint as is not inconsistent with this cause of action.

62.     On or about July 26, 1990, Congress enacted the Americans with

Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq.

63.     School Districts, as recipients of federal financial assistance and as a public

entity, are prohibited from discriminating against individuals with disabilities, as defined

in Title II of the Americans with Disabilities Act.

64.     Plaintiff Student is disabled as defined under Title II of the Americans with

Disabilities Act.

65.     The School District violated Title II of the Americans with Disabilities Act

by subjecting Plaintiff Student to discriminatory treatment.

66.     Plaintiff Student and his parents suffered from these violations of the

COMPLAINT- 25

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206-284-2245 Fax

School District.

67.  Defendant has discriminated and continues to discriminate against the Plaintiff, and others who are similarly situated, by denying access to, full and equal access to a FAPE in derogation of 42 U.S.C §12131 et seq.

68.    The Student has been unable to and continues to be unable to enjoy access to and the benefits of a FAPE.  Prior to the filing of this lawsuit, Student was denied access to the benefits, accommodations and services of the Defendant's obligates to provide a FAPE and therefore suffered an injury in fact as a result of the barriers to access listed above.  In addition, Student continues to desire and intends to complete a FAPE, but continues to be injured in that he is unable to and continues to be discriminated against due to the barriers to access and accommodation which remain at the District in violation of the ADA.  The Wongs have now and continue to have reasonable grounds for believing that Student has been and will be discriminated against because of the Defendant's continuing deliberate and knowing violations of the ADA.

69.    To date, the barriers to access to a FAPE and other violations of the ADA, including total exclusion from attending school, still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

70.    Pursuant to the ADA, District was required to make accommodations necessary for students to have access to a FAPE, as persons with disabilities.  To date, the District has failed to comply with this mandate.

COMPLAINT - 26

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206- 284-2245 Fax

71.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff is entitled to have its reasonable attorneys' fees, costs and expenses paid by Defendant pursuant to 42 U.S.C. §12205.

## VII. SECOND CAUSE OF ACTION - THE DISTRICT, THROUGH BAD FAITH AND GROSS MISMANAGEMENT, INTENTIONALLY DISCRIMINATED AGAINST JW ON THE BASIS OF HIS DISABILITIES IN VIOLATION OF HIS RIGHTS UNDER SECTION 504 OF THE REHABILITATION ACT AND THE ADA.

72.     Plaintiffs incorporate herein by reference so much of the other portions of this Complaint as is not inconsistent with this cause of action.

73.     In spite of his disabilities, Student is otherwise qualified to participate in the District's educational programs with appropriate instruction, accommodations, and supplemental supports.

74.     The District failed to provide him with appropriate educational and related services, accommodations, and supplemental services which he required in order to have access to the District's programs and services and to make appropriate developmental and educational progress equal to that provided children without disabilities.

75.     The District's failure to provide FAPE to the Student and to properly accommodate his disabilities, and ultimately and completely excluded him from school, was the result of bad faith and gross mismanagement, and discriminated against Student on the basis of his disabilities.

COMPLAINT - 27

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206- 284-2245 Fax

76.     The District's failure to timely provide appropriate educational services, accommodations, and related services to Student  has, among other things, exacerbated the impact of Students' disabilities; interfered with this ability to gain meaningful educational progress and; deferred indefinitely opportunities, programs, and services to which he would have had access if he had received appropriate related services and accommodations in a timely and integrated manner, thus excluding him from the mainstream of his school, family, and community.  Moreover, the District's discriminatory actions have caused additional emotional harm to Student causing him to develop a generalize anxiety disorder and otherwise has caused him and his parents to suffer emotional distress.  Student and his parents have been damaged in an amount to be determined at trial.

## VIII. THIRD CAUSE OF ACTION -

## VIOLATION OF WASHINGTON LAW AGAINST DISCRIMINATION

77.     Plaintiffs incorporate herein by reference so much of the other portions of this Complaint as is not inconsistent with this cause of action.

78.     Chapter 49.60 of the Revised Code of Washington is known as the "law against discrimination." Section 49.60.010 provides that it is an exercise of the police power of the state for the protection of the public welfare, health, and peace of the people of this state, and in fulfillment of the provisions of the Constitution of this state concerning civil rights. Through this section, the legislature found and declared that practices of discrimination against any of its inhabitants because of … the presence of any sensory, mental, or physical disability or the use of

COMPLAINT - 28

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206- 284-2245 Fax

a trained dog guide or service animal by a disabled person is a matter of state concern and that

such discrimination threatens not only the rights and proper privileges of its inhabitants but

menaces the institutions and foundation of a free democratic state.

79.     Section 49.60.215 of the Revised Code of Washington makes it an unfair practice

for any person or the person's agent or employee to commit an act which directly or indirectly

results in any distinction, restriction, or discrimination, or the requiring of any person to pay a

larger sum than the uniform rates charged other persons, or the refusing or withholding from any

person the admission, patronage, custom, presence, frequenting, dwelling, staying, or lodging in

any place of public resort, accommodation, assemblage, or amusement, except for conditions and

limitations established by law and applicable to all persons, regardless of …..the presence of any

sensory, mental, or physical disability, or the use of a trained dog guide or service animal by a

disabled person.

80.     Section 49.60.030 provides that any person deeming himself or herself injured by

any act in violation of this chapter (49.60) shall have a civil action in a court of competent

jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person,

or both, together with the cost of suit including reasonable attorneys' fees or any other

appropriate remedy authorized by this chapter.

81.     Pursuant to Section 9.91.010(d) of the Revised Code of Washington, the

establishment owned by the District is a place of public accommodation which provides services

to the public, specifically, education.

COMPLAINT - 29

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206- 284-2245 Fax

82.     The District has discriminated, and continues to discriminate against the Plaintiff, and others who are similarly situated, by denying access to, and full and equal enjoyment of services, facilities, privileges, advantages and/or accommodations in derogation of the Revised Code of Washington §49.60 et seq.

83.     The Student has been excluded from school and is unable to and continues to be unable to enjoy access to, and the benefits of a FAPE.  Prior to filing of this lawsuit, Student was denied access to the benefits and accommodations for the services of the Defendant and therefore was damaged and suffered an injury in fact.  In addition, Student continues to desire to receive a FAPE, but continues to be damaged and injured in that he is unable to and continues to be discriminated against due to violation of the Revised Code of Washington §49.60 et seq.

## IX.  FOURTH CAUSE OF ACTION: NEGLIGENCE

84.     Plaintiffs reallege Paragraphs 1 through 83 above as more fully set forth herein.

85.     Defendant Seattle School District has a duty to use reasonable care and keep its students safe and free from harm.  McLoed  v. Grant Cty. Sch. District No. 128, 42 Wash.2d 316, 319, 320, 255 P.2d 360 (1953).

86.     Defendant Seattle School District breached its duty and was negligent when failed to reasonably accommodate Student, failed to meet Student's needs, failed to provide Student with equal access to education and protect student from harm.

87.     Defendant Seattle School District breached its duty of care by failing to properly train and supervise its employees in accordance with safe practices and its own policies.

COMPLAINT - 30

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206- 284-2245 Fax

88.     Defendant Seattle School District breached its duty of care by failing to provide a proper and safe environment, and failing to protect Student from unnecessary risks and hazards that are reasonably foreseeable, including bullying and unfair treatment by other students.

89.     As a direct and proximate result of the District's negligence, Student has suffered and continues to suffer damages.

90.     As a direct and proximate result of the District's negligence, Plaintiffs, have suffered and continue to suffer economic loss.

91.     As a direct and proximate result of Seattle School District's negligence, Plaintiffs have incurred and will continue to incur general and special damages in an amount to be determined at trial.

## X.  FIFTH CAUSE OF ACTION: TORT OF OUTRAGE

92.     Plaintiffs incorporate herein by reference so much of the other portions of this Complaint as is not inconsistent with this cause of action.

93.     Plaintiffs allege that by its extreme and outrageous conduct, defendant has intentionally and/or recklessly inflicted emotional distress upon defendants by punishing Student for his disability and entirely excluding him from access to school among other things. The Student has been excluded from school and is unable to and continues to be unable to enjoy access to, and the benefits of a FAPE.  The exclusion from school caused extreme emotional distress to Student and his mother and even caused Student to develop generalized anxiety disorder as a result of the District's conduct

COMPLAINT - 31

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206- 284-2245 Fax

94.     Plaintiffs have been damaged and suffered an injury in fact as a result of Defendant's conduct in an amount to be determined at trial.

## XI. RELIEF REQUESTED

WHEREFORE, the Plaintiff demands judgment against Defendant and requests the following injunctive and declaratory relief:

A.     That the Court declare that District is Violative of the Sec 504 of the Rehabilitation Act, and issue damages to be determined at trial;

B.     That the Court declare that Defendant is Violative of the ADA, and issue damages to be determined at trial;

C.     That the Court declare that District is Violative of the Revised Code of Washington §49.60 et seq.;

D.     That the Court enter an Order finding Defendant Violative of the Washington Law Against discrimination;

E.     That the Court enter an Order finding the Defendant liable for Negligence;

F.     That the Court enter an Order finding the Defendant liable for the Tort of Outrage;

G.     That the Court enter an Order directing Defendant to alter its policies and procedures to make a FAPE accessible to individuals with disabilities to the full extent required by the Revised Code of Washington §49.60 et seq.;

H.     That the Court enter an Order directing Defendant to evaluate and neutralize its

COMPLAINT - 32

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206- 284-2245 Fax

policies and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures: Specifically, that the District implement and effect policies to prevent students with disabilities being subjected to, wrongly accused of, and wrongly disciplined/documented for harassment, intimidation, or bullying.  To this end, the HIB department is to fully investigate and find corroborating objective evidence substantiating each allegation, against a student with disabilities, and to confer with the student's special education team, parents/guardians, and teachers prior to taking any action and making any findings against the disabled student, and to confirm that the student possessed the intent and engaged in such behavior not as a manifestation of the student's disability;

I.    That the Court enter an Order directing Defendant to provide timely and appropriate accommodations, including the compensatory education, tutoring, and therapy, and to make a FAPE accessible to individuals with disabilities to the full extent required by Title II of the ADA;

J.    That the Court award reasonable attorney's fees, costs (including expert fees) and other costs and expenses of this lawsuit, to the Plaintiffs and as otherwise provided by Statute;

K.    That the court enter a judgment against the Defendant for damages in an amount to be determined at trial and as more specifically requested above;

and

L.    That the Court award such other and further relief as it deems necessary, just and proper.

COMPLAINT - 33

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206- 284-2245 Fax

Dated this 14th day of November, 2016.

Respectfully submitted,

By: /s/ Bridget Bourgette Shaw
Bridget Bourgette Shaw, Esq.
WSBA 28850
Shaw Law Group, PLLC
323 1st Avenue West
Seattle, WA 98119
Telephone: (206) 623-1225
Facsimile: (206) 284-2245
Email:  bridget@shawlawgrouppllc.com

COMPLAINT - 34

Shaw Law Group, PLLC.
323 1st Avenue West
Seattle, WA  98119
206-623-1225  /  206- 284-2245 Fax