Hon. Richard A. Jones

UNITED STATES DISTRICT COURT
WASHINGTON DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| JENNIFER and EUGENE WONG, for themselves and as parents of Student JW, a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>SEATTLE SCHOOL DISTRICT NO. 1,<br><br>Defendants. | No. C16-1774 RAJ<br><br>PLAINTIFF JENNIFER WONG'S DECLARATION IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

I, Jennifer Wong, am over the age of eighteen and declare as follows:

1. I am competent to testify to the matters described herein and make this declaration based upon my own personal knowledge. If called to testify, I would and could testify as described below.

2. I am JW's mother. By way of background, JW began to experience heightened anxiety relative to his second grade school year in the Schmitz Park Elementary ("Schmitz Park") environment. Among other shortcomings, a Seattle Public School District's ("SPSD" or

DECLARATION OF JENNIFER WONG IN SUPPORT OF
OPPOSITION TO DEFENDANT'S MOTION
Page 1 of 4

Shaw Law Group, PLLC
323 First Avenue West
Seattle, WA 98119

the "District") evaluation in 2012 failed to address JW's first grade teacher's concerns regarding writing, and completely missed the opportunity to assess whether JW had a language or writing disability. This missed diagnosis resulted in more stress and anxiety for JW, especially in his academic environment. As a result, JW suffered significant regression academically, emotionally, and socially during his second grade year.

3. In third grade, JW's reference school was an unsafe and inappropriate place for him to receive his education. He suffered further emotional injury and lasting damage to his future life transitions and opportunities as a result of his reference school.

4. SPSD has been on notice for years regarding our claims against the District.

5. Specifically, my husband and I discussed our claims with the School District for more than two years prior to initiating this litigation. As early as February 2014, the District knew that we suffered damages.

6. In February of 2014, JW was excluded from school by the District as a result of a temporary restraining order obtained against JW by another family. Two District counsel, Andrea Schiers and Ronald Boy, attended the all-day hearing. Testimony at the hearing discussed the bullying and harassment of JW and other harms caused to JW. Counsel for the District was well aware of the potential liability outside of IDEA. The lack of progress in the social and emotional regulation goals and the TRO issued against him culminated in JW's exclusion from school since February, 2014. Ultimately, the District has entirely failed to keep JW safe or provide him access to education, let alone Free and Appropriate Public Education ("FAPE"), since February of 2014.

7. On or about March 9, 2014, my husband and I notified the District that we were evaluating private school options as a result of the harm caused by the District and because the

DECLARATION OF JENNIFER WONG IN SUPPORT OF
OPPOSITION TO DEFENDANT'S MOTION
Page 2 of 4

Shaw Law Group, PLLC
323 First Avenue West
Seattle, WA 98119

District did not have or provide a safe supportive environment for JW. The District was notified that we were required to make child care arrangements since JW was excluded from school. In March of 2014, the District was notified that private tutoring would be necessary for JW, and we paid for private tutoring through the Yellowwood Academy.

8. On or about July 9, 2014, through our counsel, my husband and I notified the District of the damages that JW and our entire family had incurred because of the District's failure to provide JW with FAPE and failure to keep him safe. Attached as Exhibit A is a true and correct copy of the letter to the District outlining the harm caused and our claims against the District.

9. Following issuance of the July 2014 letter, the parties held a settlement discussion at District offices on July 11, 2014 to discuss our claims. District counsel, Andrea Schiers and Curtis Leonard, were present as well as district staff. My husband and I, with our attorney, Ms. Shaw, were also present. At the meeting, I presented District counsel with an itemized list of estimated damages sought from the District. Attached hereto as Exhibit B is a copy of the itemized damages, including costs for medical providers. The District representative, Andrea Schiers, reviewed the list and requested a copy. Ms. Schiers further stated that she would need to check with the District's insurance company for coverage of the claims.

10. Additionally, confirming again the District's knowledge of our claims, during Settlement Negotiations with the District in February and March 2016, District's Counsel specifically requested that we release the District from all claims *including* existing non-IDEA claims up to and through the 2014 - 2015 School years. We would not waive our Tort or

DECLARATION OF JENNIFER WONG IN SUPPORT OF
OPPOSITION TO DEFENDANT'S MOTION
Page 3 of 4

Shaw Law Group, PLLC
323 First Avenue West
Seattle, WA 98119

Discrimination Claims. Nevertheless, the District refused to resolve our claims and we were forced to file suit.

11. I certify that all of the exhibits to this declaration are true and correct copies of the originals with the exception of minor names redacted pursuant to LCR 5.2.

I declare under penalty of perjury under the laws of the United States and the State of Washington, that the foregoing are true and correct.

Dated this 24th day of July, 2017 at Seattle, Washington.

_____
Jennifer Wong

DECLARATION OF JENNIFER WONG IN SUPPORT OF
OPPOSITION TO DEFENDANT'S MOTION
Page 4 of 4

Shaw Law Group, PLLC
323 First Avenue West
Seattle, WA 98119

# EXHIBIT A

Shaw Law Group, P.L.L.C. | Bridget Bourgette Shaw, Attorney At Law
1818 Westlake Ave N, Suite 308 | Seattle, WA 98109
8201 164th Ave NE, Suite 200 | Redmond, WA 98052
Phone 206.623.1225 | Fax 206.283.0923 | bridget@shawlawgrouppllc.com | www.shawlawgrouppllc.com

July 9, 2014

Curtis M. Leonard
Preg O'Donnell & Gillett, PLLC          EMAIL: cleonard@pregodonnell.com
1800 9th Ave., STE 1500
Seattle, WA  98101-1340

RE:   Wong/Seattle School District

Dear Mr. Leonard:

As you are aware, in February of this year, I represented Eugene and Jennifer Wong along with their son, J▓▓ W▓▓, in the unfortunate and baseless Pontrelli Temporary Restraining Order matter (the "TRO"). I continue to represent the Wong family in the Due Process matter filed by the Seattle Public School District ("SPSD") as part of SPSD's denial of the Independent Education Evaluation ("IEE") requested by the Wongs at SPSD expense. The Wongs have requested that I also provide you with additional background as it relates to J▓▓ and his family and the status of J▓▓'s condition and unique educational needs. Per previous discussions, this letter shall serve as the Wong's second request for private placement for J▓▓ at district expense.

SPSD has been rendering J▓▓'s education pursuant to an Individual Education Program ("IEP"). J▓▓ is a student with disabilities including a diagnosis of Autism Spectrum Disorder and Extreme Anxiety. In addition, J▓▓ was most recently diagnosed with a Disorder in Written Expression, specifically, Dysgraphia. These recognized disabilities are juxtaposed with J▓▓'s warm and engaging personality and strengths of high verbal and cognitive skills. J▓▓'s profile as a student creates unique needs that must be specially tailored to allow him to access his education and gain meaningful benefit therefrom.

Ultimately, SPSD has been unable, and remains unable, to accommodate J▓▓'s needs including those under his IEP. Given J▓▓'s unique educational needs, as advised by Dr. Allison Brooks of the Brooks Powers Group, it is eminently clear that SPSD cannot provide an appropriate placement for J▓▓.

**Background**

Beginning with his second grade school year, J▓▓ started to experience high anxiety in the Schmitz Park Elementary ("Schmitz Park") environment, which is documented by his parents and his personal therapist. J▓▓ was not gaining meaningful benefit from his education and

suffered regression in his executive functioning, regression in his social emotional regulation skills, and did not meet educational goals relative to his cognitive profile. Furthermore, the past two years for J▓▓ and his family have been full of academic disruption combined with a lack of suitable support, both of which transformed J▓▓ into a child with anxiety into a child with diagnosed High Anxiety. Among other shortcomings, SPSD's evaluation in 2012 failed to address J▓▓▓'s first grade teacher's concerns regarding writing, and also completely missed the opportunity to assess whether J▓▓ had a writing disability. This missed diagnosis resulted in more stress and anxiety for J▓▓ especially in his academic environment. As a result, J▓▓ suffered significant regression academically, emotionally, and socially during his second grade year.

Things got significantly worse in third grade. The need for private placement became more apparent after SPSD's handling of HIB complaints and the TRO filed by the Pontrelli family. First, the Pontrelli TRO and HIB complaints made J▓▓▓'s reference school an unsafe and inappropriate place for him to receive his education without further emotional injury or lasting damage to J▓▓▓'s future life transitions and opportunities. Second, SPSD failed to meet J▓▓▓'s educational goals in his IEP by failing to create programs or provide an environment wherein J▓▓ could stay regulated while gaining meaningful educational benefit and academic achievement. This failure is evidenced by: (i) the frequent ineffective attempts to create Behavior Intervention Plans ("BIPs") without appropriate Functional Behavior Assessments ("FBA"); and (ii) the regression of his emotional wellbeing and executive functioning skills since second grade (2012-2013 school year). The lack of progress in the social and emotional regulation goals culminated in J▓▓▓'s exclusion from school since February, 2014 during his third grade year (2013-2014 school year). Ultimately, the district has entirely failed to keep J▓▓ safe or provide J▓▓ access to education, let alone FAPE, since February of 2014.

Moreover, the Wongs have also been unable to resolve disciplinary matters with SPSD, which matters and related records are replete with inaccurate information, include fabricated notifications by SPSD to my clients, and the lack the protections due J▓▓ and his family under federal law which include without limitation those associated with a manifestation determination under IDEA. My clients have also had the burden of protecting their son from third-party discipline by the Pontrellis vis-à-vis SPSD. Following the TRO and HIB matters, the Wongs and IEP team could not achieve agreement on an appropriate Behavior Intervention Plan because no proper Functional Behavior Assessment was available to provide guidance for appropriate data driven interventions. The interventions presented failed to account for the causes of J▓▓▓'s behavior (i.e., dysregulation), but instead sought to appease the Pontrellis. Following the Wongs' request that an Independent Education Evaluation be performed to obtain appropriate data for current and appropriate interventions for J▓▓ SPSD failed to discuss the need for the IEE and summarily filed for Due Process. Nevertheless, throughout J▓▓▓'s attendance at Schmitz Park, the Wongs have been active in the Schmitz Park PTA and have worked in good faith with SPSD.

**Private Placement is necessary for J▓▓**

Despite the foregoing SPSD issues, the Wongs have continued to work in good-faith with SPSD to determine proper placement for J▓▓ including, touring schools in addition to reaching out to special education staff and principals at potential placements. However, J▓▓ is unique in that he is "Twice Exceptional"; J▓▓ has exceptional cognitive capabilities but also has developmental deficits. J▓▓'s academic abilities were even recognized in 2011, during J▓▓'s kindergarten year, where he received an award for Outstanding Academic Excellence by the U.S. President's Education Awards Program and SPSD.

SPSD does not have a program that will properly serve J▓▓ SPSD has programs for children with high cognitive skills (i.e. APP and spectrum) and programs for children with areas of deficit (i.e. SM4 or ACCESS), but no program that affords both. The Wongs toured several schools in SPSD and did not find any program that would match or support J▓▓'s unique combination of needs because no program exists that appropriately supports or individualizes education for high functioning autistic children – children with high anxiety and high cognitive skills.

In an email dated March 9, 2014 to SPSD, my clients outlined the reasons why the reference school placement is not appropriate and stated that that they were looking into private placement options. In the same email, a copy which is attached for your reference, the Wongs described what would be considered an appropriate placement for J▓▓ Dr. Brooks also supports these requirements and opines that further qualifications are necessary, including: a one-to-one aid support for academic and social interactions. This support is essential as it provides structure, encouragement, and redirection when needed. J▓▓ responds very favorably to these personalized positive behavior supports. Other recommendations include, but are not limited to, a small school with a low student to teacher ratio; direct instruction to increase his skills of self-advocacy; specific education for executive functioning; individualization of curriculum to meet higher cognitive capabilities; all staff (including peripheral staff) having training and experience working with children with autism spectrum disorders; an environment where self-regulation strategies are taught, supported, and modeled throughout the day. SPSD does not have an appropriate program or placement to meet these very unique needs, but the Wongs have found an appropriate private school, Academy for Precision Learning ("APL"), that can meet these very unique qualifications and request that J▓▓ attend APL at SPSD's expense.

**Damages as a result of failure to provide FAPE**

Again, as evidenced above, SPSD has also failed to provide a Free and Appropriate Public Education ("FAPE") since the 2012 -2013 school year. The Wongs are further entitled to reimbursement and prospective payment of tuition for private placement from SPSD. Tutoring in home was provided for an hour a day for a few weeks in the month of February, 2014 and has not been provided since. J▓▓ has been out of school since February 10, 2014. Due to the substantial risk of injury to J▓▓ upon returning to Schmitz Park paired with the need for J▓▓ to receive some form of education, the Wongs placed J▓▓ in a temporary private placement for tutoring at Yellow Wood Academy ("YWA").

The Wongs have paid for the tutoring fees as well as engaged a paraprofessional with experience working with Autistic boys to help assist with J▇▇▇'s anxiety and transition into this temporary tutoring placement. While at YWA, J▇▇▇ received two (2) hours of tutoring – 1 hour of Reading and Writing and 1 hour of Math four times per week with an additional 1 hour of executive functioning which was added in the summer.

J▇▇▇ was enrolled at YWA by the Wongs in good faith and in reliance upon assurances from Ryan Richards, SPSD Special Education Supervisor, that these costs would be paid for by SPSD in the form of compensatory education and SPSD's duty to provide J▇▇▇ with FAPE for the remainder of the 2013-2014 school year. J▇▇▇'s parents have also incurred extensive costs and damages due to missed work, emotional injury, and financial losses caused by SPSD including SPSD's inability to provide J▇▇▇ with FAPE.

### Racial Discrimination and Violations of the ADA

The Wongs also contend that they have claims due to discrimination based on disability and race. All previously requested special education supports (i.e. one-on-one aide and SPSD's autism task force consultation) had been denied to an Asian with Hawaiian roots (i.e., J▇▇▇), but only after instituting a plan to protect a Caucasian (i.e., ▇▇▇ P▇▇▇) were these supports provided. Moreover, J▇▇▇'s needs as a child with a recognized disability did not determine SPSD's ability to provide support to J▇▇▇. Rather, the demands of the Pontrelli family drove the provision of supports and even propelled the writing of J▇▇▇'s most recent BIP. The district acted in bad faith.

The multitude of documented administrative errors at the district level have injured my clients and prevented J▇▇▇ from obtaining the fundamental education he is entitled to, which errors include without limitation: (1) the creation of a discipline file without notice to the parents and the absence of a manifestation determination hearing, (2) district level HIB findings made in total disregard to J▇▇▇'s disability or notice to the parents with an opportunity for defense, and (3) the implementation of HIB discipline procedures which disparately impacted, disciplined, and affected J▇▇▇ and discriminated against him.

The simple fact remains that SPSD allowed J▇▇▇ and his family to be bullied and third-party disciplined by the Pontrelli family for behavior that is and was adjudicated a manifestation of his disability; J▇▇▇'s behavior lacked intent. J▇▇▇'s parents even notified the Schmitz Park administration in writing during the 2012-2013 school year about the instability of the Pontrelli parents and concerns about retaliation over a matter unrelated to J▇▇▇. Despite this warning, SPSD proceeded to enable the Pontrellis to the detriment of the Wongs. In the February 2014 TRO hearing, Schmitz Park administration, as well as staff, stated under oath that R▇▇▇ P▇▇▇ was taunting and teasing J▇▇▇. Staff also testified to the students in J▇▇▇'s classroom exercising a "master plan" that triggered J▇▇▇ into dysregulation to create a classroom distraction. By declaration, J▇▇▇'s and R▇▇▇ P▇▇▇'s second grade teacher, David McMillan, stated that R▇▇▇ had been provoking J▇▇▇ into an autistic reaction, technically known as a stim. Despite quashing the TRO, SPSD continued to discriminate against an autistic child by issuing findings to the Pontrellis in total disregard of J▇▇▇'s disability and the basic fact that there can be "no intent" when an autistic child is stimming.

My clients are willing to discuss the due process filing for the IEE matter, but also seek compensatory education, paraprofessional support reimbursement, as well as private placement at public expense. Under IDEA, J▮▮▮▮ Wong is entitled to a free and appropriate education, and the Wongs seek the appropriate action essential to J▮▮▮▮'s receipt of the education to which he is entitled to and compensation for their costs.

Please contact this office with any questions or concerns.

Very Truly Yours,

Bridget Bourgette Shaw


Cc:   Clients
      Enclosure

# EXHIBIT B

re: JW

| Item | Provider | estimated |
|---|---|---|
| **2012-2013 school year** | | |
| Therapy for J | U.W CARE clinic at Haring Center for Autism (S. Jimenez) | $ 2,000.00 |
| BCBA Eudation Consult | U.W CARE clinic at Haring Center for Autism (M. Ralkowski) | $ 600.00 |
| | 2012-2013 TOTAL | $ 2,600.00 |
| **2013-2014 school year** | | |
| Independent Education Evaluation | Dr. Allison Brooks, Brooks Powers Group | $ 4,000.00 |
| Paraprofessional Support | David Gillum | $ 9,000.00 |
| Compensatory Education & FAPE | Yellow Wood Academy | $ 10,000.00 |
| Therapy for J and Family | Erin C. Milhem Psy.D. | $ 10,000.00 |
| BCBA Education Consult | Rina Marie Leon-Guerro, BCBA-D, PHD | $ 3,000.00 |
| Anxiety Induced ER Visits (2/14 and 6/4) | Overlake Medical Center | $ 20,000.00 |
| Anxiety Therapy Cranial-Sacrum | Dr. Devorah Steinecker - Neurologist & Doctor of Osteopathy | $ 3,000.00 |
| | 2013-2014 TOTAL | $ 59,000.00 |
| **2014-2015 school year** | | |
| FAPE (annually) | Academy for Precision Learning (APL) | $ 40,000.00 |
| Compensatory Education | Yellow Wood Academy | $ 3,000.00 |
| | 2014-2015 TOTAL | $ 43,000.00 |
| | **ESTIMATED TOTAL** | **$ 104,600.00** |

Does not include attorney's fees and mileage an reimbursement for transportation costs.

Prepared by Eugene and Jennifer Wong 7/10/2014